(Nos. 53276, 53404 cons.—

HENRY ARNOLD *et al.*, Appellees, v. THE BOARD OF TRUSTEES OF THE COUNTY EMPLOYEES' ANNUITY AND BENEFIT FUND OF COOK COUNTY *et al.*, Appellants.—VITO ABBINANTI, Appellee, v. PARK EMPLOYEES' ANNUITY AND BENEFIT FUND *et al.*, Appellants.

*Opinion filed February 20, 1981.*

SIMON, J., took no part.

58

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., Deputy State's Attorney, and Mark V. Chester, Assistant State's Attorney, of counsel, for appellants Board of Trustees of the County Employees' Annuity and Benefit Fund of Cook County *et al.*

Harry R. Posner and Julian J. Frazin, of Chicago, for appellants Park Employees' Annuity and Benefit Fund *et al.*

John R. Leitz, Jr., and Michael D. Firsel, of Kamensky & Landan, of Chicago, for appellees Henry Arnold and Edythe Arnold.

Mark L. Schwartzman, of Rotenberg & Schwartzman, of Chicago, for appellee Vito Abbinanti.

MR. JUSTICE MORAN delivered the opinion of the court:

Plaintiffs Henry Arnold and Vito Abbinanti had their pension benefits revoked by defendants, the board of trustees of the County Employees' Annuity and Benefit Fund of Cook County and the Park Employees' Annuity and Benefit Fund, respectively, because Arnold and Abbinanti had each been convicted of a felony relating to his employment. Upon administrative review in the circuit court of Cook County the decisions of the defendants were affirmed. On appeal, the appellate court reversed, finding that the statutes upon which the defendants relied did not apply to Arnold and Abbinanti, as each entered public service before the applicable date set forth in the statutes, July 11, 1955. (81 Ill. App. 3d 874; 81 Ill. App. 3d 1197.) We allowed defendants' petitions for leave to appeal and consolidated the cases for review.

The pertinent provisions of the statutes with which we are concerned (now codified in the Illinois Pension Code) are essentially identical and provide:

"None of the benefits provided [for] in this Article shall be paid to any person who is convicted of any felony relating to or arising out of or in connection with his service as an employee.

This section shall not operate to impair any contract or vested right heretofore acquired under any law or laws continued [*sic*] in this Article, nor to preclude the right to a refund.

All future entrants entering service [after] [subsequent to] July 11, 1955, shall be deemed to have consented to the provisions of this section as a condition of coverage." (Ill. Rev. Stat. 1977, ch. 108½, pars. 9—235, 12—191.)

Defendants' position is that these statutory felony-forfeiture provisions mandate the denial of pension benefits to the plaintiffs by virtue of their convictions for felonies arising from their employment. On the other hand, plaintiffs contend that the statutes are applicable only to those employees who entered service after July 11, 1955. Plaintiffs also claim that, as to them, article XIII, section 5, of the Illinois Constitution of 1970 prevents the retroactive application of the felony-forfeiture provisions of the Illinois Pension Code.

Plaintiff Arnold became an employee of Cook County and a participant of the pension fund in November of 1940. He retired from public service on January 1, 1973, at which time his pension payments began. On August 2, 1973, he pleaded guilty to a felony arising out of his employment. The defendant board of trustees of the County Employees' Annuity and Benefit Fund of Cook County voted to terminate his pension on September 7, 1973, pursuant to section 9—235 of the Illinois Pension Code (Ill. Rev. Stat. 1977, ch. 108½, par. 9—235). Plaintiff Abbinanti became an employee of the Chicago Park District and a member of its pension fund in 1947. He retired on April 26, 1977, and received his first pension payment on May 1, 1977. On December 3, 1977, he was found guilty of a felony relating to his employment. As a

consequence, his pension payments were terminated on February 16, 1978, pursuant to section 12—191 of the Illinois Pension Code (Ill. Rev. Stat. 1977, ch. 108½, par. 12—191). Each plaintiff was enrolled under separate compulsory pension plans.

Both parties concede that under the law, as it existed in 1955, the status of a participant's pension rights was dependent upon whether his participation was compulsory or voluntary. (*Keegan v. Board of Trustees* (1952), 412 Ill. 430; *Raines v. Board of Trustees* (1937), 365 Ill. 610; *People ex rel. Donovan v. Retirement Board* (1927), 326 Ill. 579.) If compulsory, participation created no vested or contractual rights in the participant. (*Keegan v. Board of Trustees* (1952), 412 Ill. 430, 434.) This is founded on the ancient premise that "a pension is a bounty springing from the appreciation and graciousness of the sovereign and may be given or withheld at its pleasure." (*People ex rel. Donovan v. Retirement Board* (1927), 326 Ill. 579, 582.) Consequently, the legislature, if it saw fit, could change, amend or repeal the pension rights of employees under such plan. *Bergin v. Board of Trustees* (1964), 31 Ill. 2d 566, 574.

If a pension program was voluntary, however, the plan was characterized as contractual in nature. Therefore, the contractual rights of the employee became vested at the moment he began contributing to the pension fund. (*Keegan v. Board of Trustees* (1952), 412 Ill. 430, 434.) The legislature had no power to diminish or repeal these vested contractual rights, and a participant was entitled to a pension based on the status of the plan at the time he began his contributions. *Raines v. Board of Trustees* (1937), 365 Ill. 610, 615-16; also see *Kraus v. Board of Trustees* (1979), 72 Ill. App. 3d 833, 837.

It is the contention of defendants that the statutes before us must be read in light of this compulsory/voluntary distinction. It is argued that the first paragraph of the provisions set out above expresses the clear intent of

the legislature to include "any person who is convicted of any felony." It is claimed that this phrase includes all persons in compulsory programs regardless of their initial date of participation. Defendants assert that it would be contrary to the intent of the legislature to arbitrarily exempt from this provision all persons who entered service prior to 1955. Defendants argue that to construe the statute to prohibit its application to a person working 17 years after the effective date of the provision is entirely unreasonable and obviously contrary to the intent of the legislature. They rely on the statement of legislative purpose found in *Kerner v. State Employees' Retirement System* (1978), 72 Ill. 2d 507:

> "[T]he obvious purpose of the statute [is] to discourage official malfeasance by denying the public servant convicted of unfaithfulness to his trust the retirement benefits to which he otherwise would have been entitled." (*Kerner v. State Employees' Retirement System* (1978), 72 Ill. 2d 507, 513.)

However, the *Kerner* case is distinguishable from the cases before us. There, the participant entered the State Employees' Retirement System in 1965. He was granted pension benefits upon his resignation in 1968. Such benefits were terminated following his conviction of several felonies relating to his employment pursuant to a felony-forfeiture statute identical to the ones here in issue. Therefore, the position of the participant was not the same as that of plaintiffs, since his entrance into the pension system was after the effective date of the felony forfeiture statute. We therefore find the *Kerner* case inapplicable.

The intent of the legislature must be found by construing the act as a whole. Meaning must be given to each part of the statute, for the legislature will not be presumed to have done a useless act. (*People ex rel. Barrett v. Barrett* (1964), 31 Ill. 2d 360, 364-65.) The defendants assert that their interpretation is not inconsistent with the

second and third paragraphs of the quoted statutes. They claim (1) that both paragraphs have application only for those persons in voluntary plans; (2) that the second paragraph recognizes the vested rights of persons in voluntary programs; and (3) that the third paragraph adds a condition of coverage for all future voluntary pension participants, *i.e.,* consent to the felony-forfeiture provision of the first paragraph. We do not agree.

In 1955, the identical three-paragraph provision (with minor exceptions) was added to most of the State's public-employee pension acts regardless of whether participation in those plans was compulsory or voluntary. A review of the Illinois Pension Code reveals only 2 of the 17 plans so amended were voluntary plans—the General Assembly Retirement System and the Judge's Retirement System. If defendants' interpretation is accepted, it would mean that the legislature used the same body of language in both types of plans, voluntary and compulsory, but intended the results to be different and contradictory in each. In the compulsory plan the amendment would apply to all employees regardless of the date of their initial participation in the pension system. However, the same language used in the voluntary plan would subject to the amendment only those persons who began their participation in the pension plan after July 11, 1955. We find this theory unpersuasive. It is logical to believe that, by amending each provison with identical language, the legislature intended to achieve identical results. That identical result is to make the provision applicable only to those persons entering public service after 1955 regardless of of the type of plan in which they were enrolled. Defendant's interpretation would render the second and third paragraphs totally meaningless and superfluous in 15 of the 17 pension codes which it amended—the compulsory plans. There is, however, a strong presumption against finding statutory language to be mere "surplusage."

The question of the effect of the felony-forfeiture

provision was addressed by the appellate court in a strikingly similar case, *Shanahan v. Policemen's Annuity & Benefit Fund* (1976), 43 Ill. App. 3d 543. There, Shanahan and his fellow officer, Goodrich, entered service in 1946 and 1950, respectively. A statute identical to the ones at issue here was passed in 1955. Both were convicted of a felony connected with their service in 1972 and consequently had their pension benefits revoked under the felony-forfeiture provision. The trial court affirmed. On review the appellate court reversed, holding that, because both plaintiffs entered service before the effective date of the felony-forfeiture provision, the forfeiture provision did not apply. The court found that the language of the third paragraph of the statute manifested the clear and unambiguous intent of the legislature to make the statute applicable only to those persons entering service after July 11, 1955.

> "If a contrary intent had been intended then the inclusion of the final paragraph *** would be meaningless and serve no purpose. We would be forced to label it mere surplus verbiage, and clearly such a presumption of surplusage is impermissible under the traditional rules of statutory construction." *Shanahan v. Policemen's Annuity & Benefit Fund* (1976), 43 Ill. App. 3d 543, 547.

We agree with *Shanahan* that it was the intent of the legislature to make the felony-forfeiture provision applicable only to those employees "entering service after July 11, 1955."

Because of our holding, we need not consider or reach the constitutional effect of article XIII, section 5, of the Illinois Constitution of 1970. For the reasons stated above we affirm the judgments of the appellate court.

*Judgments affirmed.*

MR. JUSTICE SIMON took no part in the consideration or decision of this case.