LAWRENCE HERHOLD, Plaintiff-Appellee, v. THE RETIREMENT BOARD OF THE FIREMEN'S ANNUITY AND BENEFIT FUND OF CHICAGO *et al.*, Defendants-Appellants.

First District (3rd Division)  No. 87—0162

Opinion filed April 29, 1987.

Fagel, Haber & Maragos, of Chicago (Maynard B. Russell, James A. Roth, and Steven J. Teplinski, of counsel), for appellants.

Terrance A. Hilliard, of Chicago, for appellee.

JUSTICE WHITE delivered the opinion of the court:

In December 1985, the retirement board of the Firemen's Annuity and Benefit Fund of Chicago (the board) awarded Lawrence Herhold ordinary disability benefits to continue until February 1987. Herhold filed a complaint for administrative review, seeking benefits

through April 1990. The trial court granted Herhold's motion for summary judgment and the board appeals.

Herhold began working as a paramedic for the Chicago fire department on February 1, 1977. He became a member of the Municipal Employees', Officers' and Officials' Annuity and Benefit Fund (Municipal Fund), and he made contributions regularly to that fund. On March 1, 1983, fire department paramedics began a cross-training program in fire suppression. Corporation counsel for the city of Chicago subsequently informed the board that in his opinion, under the law then in effect, paramedics were eligible for participation in the Firemen's Annuity and Benefit Fund (Firemen's Fund). The Illinois Pension Code provided that any person "eligible to contribute to any annuity and benefit fund" other than the Municipal Fund was ineligible for membership in the Municipal Fund. (Ill. Rev. Stat. 1983, ch. 108½, par. 8—126(d).) Illinois courts have not yet determined whether this section operates to terminate a member's right to continue as a member of the fund. Therefore, paramedics faced a choice between attempting to retain membership in the Municipal Fund—and facing the possibility of a legal battle over the meaning of section 8—126(d)—or becoming members of the Firemen's Fund. Herhold elected to become a member of the Firemen's Fund and on July 1, 1983, he and the other paramedics began contributing to that fund.

Herhold received a refund of his contributions to the Municipal Fund. He could not add that amount to his contributions to the Firemen's Fund because the Firemen's Fund had not accepted the reciprocity provisions of article 20 of the Pension Code (Ill. Rev. Stat. 1983, ch. 108½, par. 20—101 *et seq.*). Herhold subsequently became disabled due to an illness which was not related to his work, and, in October 1985, he filed a claim for ordinary disability benefits. In December 1985, the board granted Herhold's claim, with payments beginning November 29, 1985. The board determined that Herhold's service for purposes of calculating benefits began on July 1, 1983, two years and five months before his disability benefits began. Pursuant to section 6—152 of the Pension Code, the board found that Herhold was entitled to payment of benefits for "a period equal to ½ of the total service rendered by him" (Ill. Rev. Stat. 1985, ch. 108½, par. 6—152), or one year and two and one-half months.

On administrative review, the trial court held that Herhold's service began on February 1, 1977, and therefore his total service was 8 years and 10 months. Accordingly, it ordered the board to con-

tinue his benefits for four years and five months, until the end of April 1990. On appeal the board contends that the trial court improperly included the period from February 1, 1977, until July 1, 1983, in its determination of the benefits owed to Herhold.

Section 6—209 of the Pension Code governs the calculation of service time for the purpose of determining ordinary disability benefits for members of the Firemen's Fund. That section provides that "[i]n computing the service rendered by a fireman *** all periods during which he performed the duties of his position" qualify as "periods of service" for calculation of ordinary disability benefits. (Ill. Rev. Stat. 1985, ch. 108½, par. 6—209.) The board maintains that this provision allows credit only for service rendered in a position as a fireman, and paramedics were not defined to be firemen until 1983.

The board cites *Benner v. Retirement Board of Firemen's Annuity & Benefit Fund* (1939), 301 Ill. App. 416, 23 N.E.2d 197, in support of its position. Benner worked as a telegraph repairer from 1913 until his retirement. In 1913 the civil service commission classified Benner's position as skilled labor for the department of gas and electricity; in 1923 the commission reclassified his job as a position in the fire department. The Firemen's Pension Fund Act, in effect both before and after the reclassification of Benner's position, defined "fireman" to include persons "appointed to any position which is classified by the civil service commission of [a] city in the fire service of such city." (Ill. Rev. Stat. 1939, ch. 24, par. 943.) The court held that, because Benner's position was not classified by the civil service commission as a fire service position before 1923, he could not be considered a fireman for purposes of the Firemen's Fund before 1923. *Benner v. Retirement Board of Firemen's Annuity & Benefit Fund* (1939), 301 Ill. App. 416, 420, 23 N.E.2d 197.

■ In the instant case, the statutes in effect during Herhold's tenure as a paramedic did not adopt any other department's classifications of positions. The law in effect when Herhold applied for benefits included "fire paramedic" in the definition of "fireman." (Ill. Rev. Stat. 1985, ch. 108½, par. 6—106(a).) The Pension Code further provided that service rendered by a fireman included "all periods during which he performed the duties of his position." (Ill. Rev. Stat. 1985, ch. 108½, par. 6—209.) Thus, under the statutes in effect at the time of *Benner*, the board needed to determine how long the applicant for benefits had been in a position classified by the civil service commission as a fire service position; under statutes now in effect the board must determine whether an applicant in his

current position meets the definition of a fireman, and if so, it must determine how long he has held that position.

The board does not dispute Herhold's allegation that he performed all the duties of his position as a fire paramedic from February 1977 until July 1983. Instead, the board asks us to read the statute as though it restricted benefits to be compensation for periods during which the position was classified as a fireman's job. The statute itself does not contain such a qualification, and *Benner* does not support such a reading of the current statute. The board maintains that the legislature intended to recognize paramedics as firemen in 1983 because paramedics completed a brief course in firefighting techniques in 1983, so they could be asked to do firemen's work. The legislative debates on the bill do not indicate that the decision to expressly include paramedics as firemen was caused by any change in the paramedics' duties. In the only comments on the bill made after the amendment to the definition of "fireman" was added to the bill, Representative McAuliffe stated:

"I've seen the paramedics at work. They have a job that's equally as dangerous as firemen. They have to go into dangerous neighborhoods at times and face hostile crowds. If they have someone sick and they can't revive them, they're threatened. It's a very dangerous job." (83d Ill. Gen. Assem., House Proceedings, July 1, 1983, at 285.)

Representative Keane echoed these sentiments:

"We have with us probably the unsung heroes of any area and those are the paramedics who *** go often into very, very dangerous situations." (83d Ill. Gen. Assem., House Proceedings, July 1, 1983, at 286.)

No legislator intimated that the paramedic's job became dangerous in 1983, after paramedics took the training course.

In response to questions at oral argument, the board's attorney acknowledged that, on the board's interpretation, if Herhold had become disabled after six and one-half years as a fire paramedic, one month after he was allowed to become a member of the Fireman's Fund, he would have been entitled to only two weeks of benefits. We do not believe that the legislature intended to reward paramedics in that manner for their years of dangerous service. The board states that Herhold could have maintained his membership in the Municipal Fund if he wished to retain credit for his first six years of service. We do not believe that the legislature intended to subject paramedics to the difficult choice between joining the Firemen's Fund—losing all credit for service performed prior to 1983—and re-

maining in the Municipal Fund, at lower benefit levels, with one's right to remain in the fund subject to legal challenge. Ill. Rev. Stat. 1983, ch. 108½, par. 8—126(d).

■ Finally, the board argues that Herhold is precluded from receiving service credit for his work from 1977 to 1983 because he accepted a refund of contributions he made to the Municipal Fund for that period and he failed to pay that amount into the Firemen's Fund. Herhold alleges that he is now and he has been ready and willing to pay that amount into the Firemen's Fund. The board admits that it will not accept sums transferred from other funds, as it has not accepted the reciprocity provisions of the Pension Code (Ill. Rev. Stat. 1983, ch. 108½, par. 20—101 *et seq.*). Herhold cannot be denied credit for the first six years of his work as a fire paramedic on the basis of his failure to transfer his refund to the Firemen's Fund when the Fund refused to accept the transfer of that money.

The legislature has decided that fire paramedics qualify as firemen and that they merit service credit for as long as they have performed the duties of their positions. The board need not grant persons who accept positions in the fire department credit for time served in other positions and in other governmental departments, but it must, under section 6—209 of the Pension Code, grant them credit for all of the time they served in the positions which qualify them as firemen. Herhold began to work as a fire paramedic on February 1, 1977, and the trial court appropriately found that he earned credit towards his disability benefits in performing the duties of his position from February 1, 1977, to July 1, 1983. The judgment of the trial court is affirmed.

Affirmed.

McNAMARA, P.J., and FREEMAN, J., concur.